This is a factually, not a very contested factually case, factual case. It involves on July 7, 2007, there was a train, a CTA train, on a red line going to Cermak. A couple hundred feet away it stops because someone is threatening to commit suicide. Right CTA shuts power down. Lights go off. Air conditioning goes off. People are in the car. And for an hour they sit. It's hot. It's about 80 degrees outside. Very humid at night as it would be normally in summer. And finally after about an hour, parenthetically, during this hour, an announcement comes on and says if anybody tries to alight the train or traverse the train, you're going to be subject to arrest. So everybody sits there diligently. And then after the hour, they're going to be arrested. An hour, approximately an hour goes by. Somebody from the CTA goes down the aisle and says, okay, you can start to walk back to the station. Leaves doesn't do anything as far as. Let me ask you this, Mr. Simon. Is this a, where they actually are located? Are they at a platform or they're away from the platform? They're away from the platform. They're away from the platform. And I think the estimate is a few hundred feet. Okay. So they're alighting from the train and so there's a five foot drop to the. Correct. To the gravel embankment. So it's not a platform that they're getting out. Correct. Not a platform they're getting out. Where they're alighting. Okay. So. Any indication as to when, at some point, the power had to be turned back on. By an hour. The trains had to be moved. Well, that's, but people got off before that hour. Yes. Before the electricity came back on and enabling the cars to be moved forward to the platform. No. From what I understand, that stayed right with the spot. It stayed there for some time. I mean, at some point, the cars had to move. Right. But there's no indication in the record as to when that happened. No. Okay. So where they were alighting was not a platform. It was a gravel area. Correct. And, in fact, the Chicago Fire Department helped with the people getting off the train, the alightment, but nobody else from the CTA did. In any event, people were taken off some wheelchairs, some stretchers. Mrs. Torf decides to wait because she's somewhat physically disabled. Says, okay, I'm going to be the last one out if I can. Lets as many people out as can be. It's still dark in there. She finally gets to the, scooches to the edge of this thing. And at which time, two fellas come in from the other car. And that, I think, is undisputed. And one literally uses her as a springboard to get the heck off the train. Was this the only car, then, that was open for getting out? That we don't know. We do know that people did come from the other, apparently these two at least came from the other cars. Because of the darkness, it's sort of hard to know what's really going on. In fact, her husband was very close to her. Didn't even see what happened. Okay. But there weren't, you said that a CTA person came through and said you can get off now. Correct. But no one from the CTA suggested how or what, and there weren't people there assisting. Is that right? That's correct. As far as the fire department was, nobody from the CTA. There were policies in place. Okay. So the fire department people were on the gravel area? Yes, taking the people that needed to be off on ambulances or two ambulances into the hospital. In fact, there are policy and procedures in place during emergency lightments that are supposed to be there, and that's one of the allegations of negligence. Having said that, one of the fellows from the other train apparently comes in, springboards off of Mrs. Torf into the embankment below, doesn't even decide to wait. Then another fellow comes from the other train, and this is where it gets a little dicey as far as this motion for summary judgment comes in, because what the testimony is is that there's contact, and all Mrs. Torf knows is that she's pushed from behind, two hands push her. At that point she sort of goes forward, lunges off, falls off the train. Someone catches her on the platform five feet down to break her fall. Not on the platform, but on the gravel. I'm sorry, on the gravel. Thank you for saying that. Isn't your primary argument that you are not, your complaint isn't based upon a failure to provide security to prevent criminal acts of third parties, but rather it is a breach of the duty to have the care so that the passengers could get off safe? Yes, that's exactly it, Judge. What is your best case for us to say that this interpretation that the CTA has put on this section is too broad? Well, how do we contend, or how does anybody come to the conclusion in this case, on the motion for summary judgment, no material question of fact, that this was a battery? Simply stated, with all due respect to Judge Flanagan, I don't think that any reasonable. See, that's not the question I'm asking. Okay. I'm not asking about the battery. Okay. I understand your position that there would certainly be questions of fact whether she was battered when someone flew over her and whether the other person who pushed her, whether those were acts that were intentional and amounted to a battery. I understand all that. I thought your primary argument was significantly different. You can correct me if I'm wrong. I thought you were arguing that this case is not, there's no immunity because this is not about the failure to provide security to prevent criminal acts of third persons. Now, I mean. Well, I think, Judge, in essence, I think that the theory of the case is that we're not saying that there was a failure to prevent criminal activity. That's exactly right. We're not saying that that's what our theory is about. It's about exactly the failure of the CTA to properly maintain this enlightenment procedure to help out. Then what I asked you was what is your best case to support that theory, that this is not about a failure to provide security. It's about not providing a safe way for a passenger to get off this train. All right. Well, okay. You have a car a couple hundred feet away or a few hundred feet away from a platform. You know it's been sitting there for an hour. People are dark. What's your best case? My best case? Your best case? Precedent. Oh, precedent. I'm sorry. Case authority. Okay. Well, I think the only one we cite in our brief, I'm not sure that there's actual authority to say that. I think it's a factual case. There is some out there, but you don't have it. I don't have it. No, Judge. I think we cited Eden. Let's get into the analysis of how this case got to the point of being dismissed. My understanding is that she ruled that it was a question of law, whether or not a duty existed on the part of the CTA to prevent or to have somehow prevented the individual from pushing her off the car. I think, Justice, I think really what came down to it, she ruled this was a motion for summary judgment. She ruled that it was a battery that occurred and, therefore, Section 27 immunizes the CTA. Pure and simple. But that section deals with whether or not the CTA has a duty at law, and she found that there was no duty to have prevented, on the part of the CTA, to have somehow stopped anyone from pushing her off the train platform. I would disagree, respectfully, Your Honor. I don't think that's what the judge ruled. What did she say then? I think she ruled that this conduct was battery and, therefore, because it was battery, not that there wasn't a duty. Let's stick to what your cause of action is. Right. You have three elements to your cause of action. She says your cause of action falls short on one of those elements. Which element was that? It wasn't duty. It wasn't duty? It was not duty. It was an immunity. It was an affirmative defense of immunity. It was not duty. The judge did not say that there wasn't a duty, Your Honor. What the judge did say is that the act, the CTA was immunized by the fact that battery had occurred pursuant to Section 27. There was not, this was not a motion to dismiss for lack of duty. This was a motion for summary judgment saying the CTA is immunized because the act of this push was battery. All right. Are we talking about the same thing as immunization on the part of the CTA from liability for these sort of acts, the same thing or the flip side of the absence of a duty? No. It's not the same thing, respectfully. There's duty, and then there's immunity from acts. There's a duty. Okay, hold on. Yes. work its way into the elements of your cause of action to somehow have it fall short? How does immunity fall into the elements of your cause of action? I believe it doesn't. It's an affirmative defense, which they have raised, saying that the act of this person pushing her off the train was a battery. Okay, was the application of that section that gives immunity for security and police actions, did that involve a question of law as to its application in this case? Twofold. I believe, yes, it did because I don't think we've alleged the, as Justice McBride pointed out, we did not allege that as part of our cause of action. That's what you're, I'm interpreting what you have alleged. Right. Right. Isn't this just a simple issue? Was her pushing a criminal act? Yes. Isn't that what it's all about? That's all about. That's all about. You've crystallized it in a nutshell. And the story. And the story. Is it or isn't it, is it a question of fact? And did she say, yes, it was? She said it was battery, that there was an intentional act that had occurred. I don't see, quite frankly, how you could reach that conclusion on a motion for summary judgment. In this scenario, in this scenario, it's not a pickpocket like Egan. This isn't a murder. It's not a strong-arm battery. But you're, in fact, your position, the position you took in your brief was that the acts committed by this individual from behind the plaintiff in pushing her off could have also been interpreted as an overreaction by that individual to get off the train as quickly as possible. And it wasn't necessarily a criminal act. And that turns it into a question of fact, and that should be decided by the prior effect. She said that that's not a question of fact, that it was a question of law, and that she could decide it in the summary judgment motion. Yes. And I'm not quarreling that it would be a question of law, but in this scenario, it's a question of fact whether this act of somebody trying to get the heck off a train is a battery. And simply stated, that's it. I mean, there is a thing as a negligent pushing, isn't there? Yes. Absolutely. Always existed in the law. Yes. And, in fact, a pre-27 case which is cited in our response brief talks about that. Lutz is the name of that. And it's a question that could be negligent pushing. It's dark. Who knows what happened there. But you can't just conclude that there's mens rea or intent or a battery had occurred, and that's my point. Well, are you conceding, then, that if there's a factual question as to battery, that the immunity section applies in this case? I would contend it doesn't apply. Having said that, I think I have to look at it in the alternative to say that if it did, it still would not. Okay. Well, that's how I thought that you were, you know, couching your issues here. It is, Judge. I just didn't verbalize it very well. All right. We're going to give you an opportunity to respond. Thank you very much. Before you start, let me ask you a question. Is there such a thing as a negligent pushing? Before you answer that question, could you please identify yourself? Certainly. Steve Wood for the Chicago Transit Authority. I'm sorry? You're Stephen Wood? Stephen Wood for the Chicago Transit Authority. The issue in this case is the application of the immunity statute found in the MTA Act, and it arises in the context of a motion for summary judgment. The CTA put forth evidence that this contact by both the first passenger and the second passenger were intentional criminal acts. It was the plaintiff's burden to then come forward with some genuine issue of material fact to avoid summary judgment to show that it was not, and plaintiff failed to do that. What was the evidence regarding the intentional? What was the evidence to demonstrate that it was an intentional act? Plaintiff's own testimony, the physics of how this actually occurred, and her husband's testimony. And it goes back to Justice Gordon's question. Is it a matter of law that it was an intentional act on the part of that individual behind the plaintiff, or could it have been a negligent act by him in pushing her off the train? There are no facts to support a negligent motion. It would be speculation. What facts are there to support an intentional act other than the act itself? And that act may be subject to different inferences taken from that act. The context in which this occurred, the fact that this was not a crowded train, this was not a rush to the exits as plaintiff argued in response to the motion for summary judgment below. This is not a Lutz case, which they cited in their brief. Plaintiff and her husband waited until the car was completely empty. The train car had emergency lighting. There's absolutely no testimony in this that they were unable to see or that these other two individuals were unable to see them. Both of them testified that they could see other people in the car and that they could see people in the adjacent car. So there was sufficient lighting here to avoid the argument that someone accidentally bumped into her in the dark. She is at one point at one side of the door and her husband is at the other, and she's going down to sit when a person behind her, a tall male behind her, puts his arms on her shoulders and pushes her down with such force that she almost lands on her back. She stops herself. Mr. Wood, is that the second person or is that the first? That is the first person. Okay. I thought the first person kind of catapulted over her. And then jumped. So put her hands on the shoulders, pushed her down so hard that she had to prevent herself from falling on her back by putting her hands behind her. Okay. Let me ask you this question regarding the intentional versus negligent pushing. What purpose, what intentional purpose can you tell us that the individual that pushed her off the train would have had? The CTA's invocation of this immunity does not require us to come up with a theory. Well, it requires an intentional act, you say. And the question is if it was an intentional act, there must have been some purpose behind that intentional act. And my question to you is what purpose could someone have in pushing her off the train if it wasn't, in fact, more likely to have been a negligent pushing because the individual was maybe taking too long to get off or maybe the person tripped and in the course of tripping comes into contact with her back and in contact with her back she falls off the train. She didn't fall off the train, though. The first individual threw her to the ground. We know that part, but that has nothing to do with the pushing. She's leaning back on the floor. We know that part, too. And a second individual, therefore, had to lean down, put his hands on her back, which is what she testified to, and launch her with such force that she, quote, unquote, flew off the train. You know, when you talk about intention, okay, intention, you know, is the subject of manifestation of a thought process of the person doing the act. There's no evidence what this person's subject of manifestation of thought process is. But if that were required, then the immunity statute would never be invoked at the summary judgment stage. That's not true. And we know that it has been repeatedly. But not true because there are certain acts, such as pulling a gun, such as striking an individual in the mouth, or any other variety of acts that every reasonable person will interpret it as an intentional act. And this is not that case because we have no one who actually saw the individual put his hands, if it was a he, on her back and push her off. It wasn't he. She testified it was a he. She testified it was a tall man who put his hands, both hands, on her shoulders and pushed her to the ground. Hold it. Hold it. You're saying it was a tall man. She is down below sitting on her behind, and he's the tall man, which would have required him to bend down a substantial amount for him to be able to put her, his hands, being a tall man, and push her off the train, which goes back to Justice Gordon's point of a manifestation of purpose behind that act. And the question is, what evidence is there that there was any purpose behind that act? Those facts suggest that he did it intentionally, that he did it knowing that he was going to cause her harm. I want to talk to you about the Battery Statute, but before we get there, Egan says that the statute, now we're talking about Section 27, by its plain language insulates the CTA from liability only for claims based on theories of the negligent failure of the CTA employees to prevent crimes. Do you agree with that? I agree. That's what Egan said. The statute is broader. There are three subsections actually that are protecting us. The section that both of you have relied on in your brief is, neither the authority, members of the board, nor its officers or employees, shall be held liable for the failure to provide a security or police force, or if the security or police force is provided, for failure to provide adequate police protection or security, failure to prevent the commission of crimes by fellow passengers or other third persons, or the failure to apprehend criminals. Is that what you're saying when you say the three sections? Exactly. There are three failures, and to the extent the plaintiff is now arguing. These failures relate to the failure to provide security, which they've never alleged. This was not about providing security. It was about getting off safely. The other section, and it's been interpreted this way, is that if security is provided, that this is supposed to immunize the CTA for the failure to prevent crimes. Now, we don't have the failure to provide security, and we don't have security that was provided that didn't do enough to stop a crime. I think that's what plaintiff is getting at. What is the failure of the CTA here? The failure of the CTA is preventing these two passengers from harming the plaintiff during an evacuation. That's not what they're getting at. They're saying they were stopped on a train. They weren't even allowed to get off at a platform. They had to get off on a gravel area, and she really wasn't able to get off safely because there was a five-foot drop. The essence of the claim is that they waited until the end, and then she falls and injures herself. But her husband testified that the instructions he heard were to go to the door, wait, and they would be assisted off. Plaintiff and her husband didn't wait. Right there. Right there. Right there. This triggers the question I have, which is, was this a factual dispute that Judge Flanagan resolved? I mean, every argument that you've been making is a question of fact. Hold on, Mr. Wood. Hold on. If it's a question of fact that Judge Flanagan resolved, then it had to be facts that no one could really argue about as a matter of law. And is that your position as opposed to she ruled that as a matter of law, this immunizing section applied to these facts? The facts are undisputed. The plaintiff had an opportunity. Hold it. They can't be undisputed. They cannot be undisputed because you're calling the acts intentional. He's calling the acts negligent. So they cannot be undisputed. They are undisputed in the sense that there are no facts to suggest that it's nonintentional. There are no facts to suggest that this person was running through the door and happened to bump her. Did he say, excuse me? Did he say, I'm sorry? Did he look back and say, are you okay? None of that is required. All of that suggests that this was intentional. And there's not a single fact in this record to suggest that this was incidental contact, that it was accidental, that it was a mere brushing. These two individuals put both of their hands on this woman, threw her to the ground, and threw her off the train. Judge Flanagan concluded that this, at its essence, was a failure to prevent a criminal attack. That's what she concluded. If you read the complaint, there's nothing in there about preventing a criminal attack. But she concluded that the complaint was, at its heart, a failure to provide security. But there's no mention of that at all anywhere in the complaint. Now, putting that aside, let's talk about a battery. The actual definition of a criminal battery, if we're going to use this crime thing to get out from under, battery is defined by the intentional or knowing, without legal justification, and by any means causing bodily harm to an individual or makes contact of an insulting or provoking nature with that individual. Now, you certainly couldn't go with bodily harm here. Do we have any testimony that established that she was harmed by these two, or was she harmed when she fell? She didn't fall. She was thrown off the train. That's her testimony. She hurt her hand. When she finally landed on top of somebody, isn't that when she was injured? She testified that she fell on her hands when the first individual threw her down to the ground inside the train, and she landed on her hands. She said that as soon as that happened, her hand started hurting. Wasn't the testimony that she was injured as a result of the fall? She was then, again, she didn't come into contact with the ground below. She was caught by an individual who was on the ground. I don't know how the judge could conclude that the bodily harm that she suffered was because somebody pushed her or it was because she fell. The nature of her injuries are the result of a fall or being pushed, but not the contact on her back. That's not how she got injured. It's when she landed on her hand and she hurt her back. He would still have committed a battery if he threw her to the ground and she hit her hand in hitting the ground. I can't possibly say on this record that it was established that there was bodily harm caused by any pushing or scarps. Now, maybe you could argue there was physical contact of an insulting or provoking nature, but I think that's hard to say as a matter of law based on even her testimony. The two young individuals, males, pushed her. No, Your Honor, the train car was empty. That's a reasonable, it doesn't matter. They had been stuck there for how long? And they knew exactly why they were stuck there, because of a suicide threat and they saw the individual being taken off the wall. You know, apparently everybody in the world wanted to get off as quickly as possible, except for Mrs. Thorpe. Your Honor, I would dispute that. The argument below to the judge below. Why would anybody want to be stuck on a train after they've already been stuck on it for an hour or more in 80 degree temperatures with the lights off and the air conditioning off? If she had been in a hurry to get off, she would not have waited for the train car to empty. I don't contest that she wanted to get off. In fact, she was impatient. The other two. Now, we don't know if they were in a locked car and had to get off at this particular spot and that's why they were in a hurry to get over her. I mean, isn't that a reasonable inference? It's not a reasonable inference to think that these two individuals were simply trying to get through the door quickly. They didn't act like that. There was no running to the door. There was no pushing her out of the way. There was a pushing her down to the ground. Now, let me ask you this. Does 27 apply if there's other people behind her and we're in a crowded situation? Now, this is just a hypothetical. Does 27 apply if there's a mass of people and she's sitting down and is pushed out? That's sort of the Lutz case. Would Section 27 apply to the Lutz case if the CTA engaged in acts that caused a panic? In which case, I think it would be a close question. They didn't provide any assistance to get off. They just said you can get off now. Is that what happened? Your Honor, the testimony of the plaintiff's husband was an announcement came on. We were told there was going to be an evacuation. We were told to go to the doors, line up, and wait for assistance. The evidence from the CTA... No assistance came. Well, we don't... What the plaintiff testified to was she and her husband waited until all the other people had left. Okay, so could we go back to my hypothetical? Let's assume that the person walked through and said you're all going to be... you can all get out now. Did somebody come through and say you can get off the train now? Her husband testified that someone announced over the intercom... All right, okay, someone announced. That the passengers were to go to the door, line up, and wait for assistance. The CTA transportation manager who was deposed testified that that was consistent with the CTA procedure. The CTA procedure is that the operators or CTA personnel assist people off the trains. Okay, did she fall on top of a CTA person? She was pushed out of the train. Maybe the doors... Did she end up on a CTA person? No, her testimony was that... Was anyone from the CTA waiting there below? She testified that she saw CTA people, fire department people, police people, assisting another passenger in a wheelchair off of the car adjacent to her. There's no testimony that she stuck her head out the door and looked for. So maybe they shouldn't have opened the doors to allow anyone to get off that train without personnel being there to assist people to get off. I mean, there's a variety of situations here. To the extent that that is the theory, Section 27 immunizes the CTA from failure to provide adequate security. Egan says that this is not about security for helping someone off and on a train. It's security to prevent criminal activity by third person. I'd like to know how you're arguing that this 27 encompasses all activity or is it designed, as Egan says, to prevent the criminal activity of third parties? Your Honor, Egan dealt with that specific subsection of the statute. But that's Subsection 2B. Subsection 2A of the statute immunizes the CTA from failure to provide adequate security. Where are you reading from? From the statute. Are you reading from 27? Subsection 27. Neither the authority, the members of the board, nor its officers and employees shall be liable for the failure to provide security or police force. Or, Subsection 2, if police is provided, A, for failure to provide adequate security. And if the injury... Are you saying that the first section has nothing to do with the prevention of crime? The first section, I'm confused. Yes. Are you saying that this is a general provision for failure to provide a security or police force? Are you saying that that has nothing to do with the prevention of crime by passengers or third persons or the failure to apprehend criminals? Because maybe that has something. I'm saying that that general provision contains three subsections where the CTA cannot be held liable for its failure to do three things. Okay. The three things are providing adequate security... Right. ...preventing the commission of a crime... Okay. ...and apprehending criminals. Okay. Then what did Egan... What was the Supreme Court trying to tell us when they said... Egan was in the appellate court... ...the statute insulates the CTA from liability only for claims. Only. They used the word only. Based on theories of the negligent failure of the CTA employees to prevent crimes. I believe Egan is much broader than that. I believe the statute of the language which Egan testified was unambiguous is broader than that. Okay. I think that was a response to an argument about the prevention of crimes, but the statute is much broader. And to the extent the plaintiff is attempting... What case would you rely on then, Mr. Goodman? Tell me out here. What case would you rely on to say that this immunity provision is much broader and that the first section, failure to provide security or police force, has nothing to do with criminal activity but is more about providing safety and getting off and on a train in an emergency situation? That is not my argument. I do not contest that the CTA is liable for injuries that occur during an evacuation, for failure to provide adequate instructions in an evacuation, et cetera. But when the injury complained of is caused by a lack of security. The argument here is that there was a lack of personnel standing between these two individuals and the plaintiff, and had there been, there would have been no injury. There were not inadequate instructions here. They were told to line up and wait. Plaintiff didn't. If she had fallen, if she had slipped off, her hand had slipped off of a dirty handle, or there hadn't been a ladder underneath, which the evidence shows there are. On every single train car, every single door, there is an attached ladder so that people don't have to jump five feet. They actually can step two feet down. Was there a ladder in this case? There is in every single car, and their evidence is that it was there. Was there testimony about the ladder in this case? There was testimony by Mr. Negron, who was the transportation manager, that every car is equipped, and that's a federal standard. Not that the ladder was in place in there for use. People weren't going down off the ladder. The testimony was that people were jumping, but there is also written instructions he testified on inside of every door. But again, these folks, the plaintiff and her husband didn't wait. Their theory was the husband was going to jump down first and assist the wife. They weren't going to wait for the CTA employees to do the assisting. But to the extent that Section 27 does not apply, this is clearly a cause versus condition case as well. Did Judge Flanagan reach that issue? We contend that she did not reach that issue, that she avoided that issue by relying on Section 27. But because the standard of review here is de novo, this Court can conclude that this was a condition and not a cause. And the court case that we cite in our brief in this Court is directly on point. And the plaintiff has provided absolutely no argument to contest court, to argue that court doesn't apply, to argue that condition versus cause should not be the basis of the decision of this Court. Let me ask you one question. I'm very intrigued with your argument that the causation here was the lack of security, so therefore there should be immunity. The problem I have with that is that I don't find anything in the plaintiff's complaint where he alleged the lack of security. The plaintiff argued, or alleges in Section 7 of her complaint, that the CTA owed the highest duty of care to protect the safety of its passengers, and specifically owed this plaintiff that duty. Protect them how? But that's not what occurred in this case. She didn't slip off of this because she didn't get proper instructions. She didn't fall off of it because there's some defect in the car or some defect in the evacuation process. She was thrown off of this car by another passenger. And to the extent that that is the cause, and it is the undisputed facts showing that that's the cause of her injury, then Section 27 protects the CTA in this context. But thrown off is a little bit different than somebody pushing you. She testified. She testified, pushed me from behind, so I went flying off the train. Pushed me from behind, so I went flying off the train. From that, we're going to say, as a matter of law, the person battered her. And her testimony was that the physical position she was in at the time was she was almost on her back, on the ground, inside the car, and that someone had to, with such force, basically pick her up and eject her. And our contention is there's no other way to read those facts than to conclude that that was intentional conduct, intentional battery by the two passengers. So if we couldn't conclude it was intentional, then there would be a question of battery. Even though Judge Flanagan concluded it was intentional. If reasonable minds could differ on whether this was intentional or not, then it's our contention clearly that the court case applies, that this is a cause versus condition case, that the condition of this provided a condition, but it did not provide a cause. The two individuals who contacted her and ejected her from the train were the cause of this. Thank you very much. Thank you. I'm just going to dwell just on the proximate causation issue. Very briefly. Very quickly. Sometimes the best thing to do is not say a word. I'm not going to say a word about the first part at all. But the proximate cause of the complaint, here's what Flanagan says. Did she reach the proximate cause? She did. The complaint here falls within the immunity afforded under Section 27, and the action must fail. The defendant alternatively argued that there was no evidence of causation. However, questions of causation, including whether an act or omission is a condition or a cause, are usually ones of fact. Nevertheless, blah, blah, blah, the defendant. Nevertheless what? I'm not sure. Did she reject the argument, or did she simply say, I'm not sure? No, she said, nevertheless, the defendant is entitled to summary judgment based on the application of Section 27. Only on the first part, and not on the causation part. That's it. Thank you. All right, thank you. All right, the case will be taken under advisement.